**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**


Susan Heino

    v.

U.S. Bank, N.A. as Trustee
For LSF9 Master Participation
Trust

Civil No. 16-cv-128-LM
Opinion No. 2016 DNH 219


**O R D E R**


This case, which has been removed from the Merrimack County Superior Court, consists of five claims asserted by Susan Heino in response to defendant's attempt to foreclose on a mortgage Heino gave to defendant's predecessor in interest, Washington Mutual Bank ("WaMu").  Before the court is defendant's motion for summary judgment.  Plaintiff objects.  The court heard oral argument on defendant's motion on July 26, 2016.


**Summary Judgment Standard**

A movant is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In reviewing the record, the court construes all facts and reasonable inferences in the light most favorable to the nonmovant.  Kelley v. Corr. Med. Servs., Inc., 707 F.3d 108, 115 (1st Cir. 2013).

**Background**

Unless otherwise indicated, the facts recited in this
section are undisputed at this early juncture.

A.   Heino's Mortgage

In early 2005, an employee of WaMu approached Heino,
unsolicited, and told her that WaMu could provide her with a
mortgage loan that had more favorable terms than the loan she
had at the time.  However:

> He did not identify the loan as a negative
> amortization loan, and he did not explain the terms of
> the loan.  Instead, he represented that it would
> provide her a lower interest rate, and that timely
> payments on the loan, would result in the principal
> decreasing, when in fact, he knew that the principal
> would not decrease.  He also told her that her
> interest rate would remain the same for one year, when
> in fact, it would actually only remain the same for
> one month . . . .

Doc. no. 1-1 ¶ 10.  Based upon those representations, Heino
submitted a loan application to WaMu.

On May 18, 2005, in exchange for a loan of $311,000, Heino
gave WaMu an adjustable rate note.  The following statements
appear on the top of the first page of Heino's note:

> THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN
> MY INTEREST RATE AND MY MONTHLY PAYMENT.  MY MONTHLY
> PAYMENT INCREASES WILL HAVE LIMITS WHICH COULD RESULT
> IN THE PRINCIPAL AMOUNT I MUST REPAY BEING LARGER THAN
> THE AMOUNT I ORIGINALLY BORROWED . . . .

Doc. no. 5-4 at 2 of 9.  Regarding changes in Heino's interest
rate, the note provides: "The interest rate I will pay may

further change on the 1st day of July, 2005, and on that day

every month thereafter." <u>Id.</u> at 3 of 9.  Under the heading

"Changes in My Unpaid Principal Due to Negative Amortization or

Accelerated Amortization," the note provides:

> Since my payment amount changes less frequently
> than the interest rate and since the monthly payment
> is subject to the payment limitations described in
> Section 4(F), my monthly payment could be less or
> greater than the amount of the interest portion of the
> monthly payment that would be sufficient to repay the
> unpaid Principal I owe at the monthly payment date in
> full on the maturity date in substantially equal
> payments.  For each month that the monthly payment is
> less than the interest portion, the Note Holder will
> subtract the monthly payment from the amount of the
> interest portion and will ad[d] the difference to my
> unpaid Principal, and interest will accrue on the
> amount of this difference at the current interest
> rate.

<u>Id.</u> at 4 of 9.

To secure her promise to repay the loan, Heino gave WaMu a

mortgage on her property in Contoocook, New Hampshire.

Paragraph 22 of the mortgage is titled "Acceleration; Remedies."

That paragraph includes the following relevant language:

> Lender shall give notice to Borrower prior to
> acceleration following Borrower's breach of any
> covenant or agreement in this Security Instrument
> . . . .  The notice shall specify: (a) the default;
> (b) the action required to cure the default; (c) a
> date, not less than 30 days from the date the notice
> is given to Borrower, by which the default must be
> cured; and (d) that failure to cure the default on or
> before the date specified in the notice may result in
> acceleration of the sums secured by this Security
> Instrument and sale of the Property.  The notice shall
> further inform Borrower of the right to reinstate
> after acceleration and the right to bring a court

> action to assert the non-existence of a default or any
> other defense of Borrower to acceleration and sale.
> If the default is not cured on or before the date
> specified in the notice, Lender at its option may
> require immediate payment in full of all sums secured
> by this Security Instrument without further demand and
> may invoke the STATUTORY POWER OF SALE and any other
> remedies permitted by Applicable Law.

Doc. no. 5-5 at 16 of 23.

At her closing, Heino was not represented by counsel, but WaMu was.  The closing took less than an hour.  WaMu's attorney did not allow Heino to read any of the closing documents, and did not explain any of the terms used in those documents to her. As Heino said in her verified complaint:

> [I] did not realize at the time that the loan [I]
> signed with WAMU was an adjustable-rate, negative
> amortization note.  In other words [I did not
> understand that], despite making [my] payments timely,
> the outstanding balance of the loan would increase
> because the payments were less than the interest
> charges.

Doc. no. 1-1 ¶ 13.

B.   History of the Mortgage

Heino's original mortgagee was WaMu.  However, "WaMu collapsed on September 25, 2008." Kim v. JPMorgan Chase Bank, N.A., 825 N.W.2d 329, 330 (Mich. 2012).  Upon WaMu's collapse,

> the federal Office of Thrift Management closed the
> bank and appointed the Federal Deposit Insurance
> Corporation (FDIC) as receiver for its holdings.  That
> same day [i.e., September 25, 2008], the FDIC, acting
> as WaMu's receiver, transferred virtually all of
> WaMu's assets to [JPMorgan Chase Bank] under authority
> set forth in the Financial Institutions Reform,

Recovery, and Enforcement Act of 1989.  Under 12 U.S.C. § 1821, the FDIC is empowered to transfer the assets of a failed bank "without any approval, assignment, or consent . . . ."  However, in this case, [the FDIC] did not avail itself of that authority.  Instead, the FDIC sold WaMu's assets to [JPMorgan Chase Bank] pursuant to a purchase and assumption (P & A) agreement.

Id. at 330-31 (footnotes omitted).  In October 2008, JPMorgan Chase Bank, N.A. ("Chase") informed Heino that it was her new loan servicer.  Doc. no. 1-1 ¶ 15.

In February 2013, acting in its capacity as the receiver of WaMu, the FDIC executed an assignment of Heino's mortgage to Chase.  That assignment was filed in the Merrimack County Registry of Deeds, and it includes this language: "This Assignment is intended to further memorialize the transfer that occurred by operation of law on September 25, 2008 as authorized by Section 11(d)(2)(G)(i)(II) of the Federal Deposit Insurance Act, 12 U.S.C. S1821(d)(2)(G)(i)(II)."  Doc. no. 5-6 at 2 of 2. In August 2015, Chase executed an assignment of Heino's mortgage to the defendant, U.S. Bank Trust, N.A., as Trustee for LSF9 Master Participation Trust ("U.S. Bank").

C.   Heino's Payment History

About a month after her closing, Heino discovered that the interest rate on her loan had increased.  She also discovered that her principal balance would not necessarily decrease over

time, because the loan she received from WaMu was a negative
amortization loan.

In 2009, at a point when she was current on her loan
payments, Heino asked Chase about obtaining a lower interest
rate.  According to Heino:

> Chase told [her] that if [she] wanted to modify the
> loan to obtain a lower interest rate, then [she] would
> need to fall behind on [her] payments.  Per Chase's
> instructions, [she] stopped making [her] payments.
> Once [she] was far enough in default, [she] submitted
> a modification package to Chase.

Doc. no. 10-2 ¶ 11.  In August 2009, Chase approved Heino for a
loan modification trial payment plan ("TPP") and told her that
if she completed the trial successfully, a permanent
modification would be put in place.  Neither party has produced
any written memorialization of the TPP agreement.  Heino made
the payments required by the TPP for September, October,
November, and December 2009.  For January 2010, Chase told Heino
to make a payment that was even less than the reduced amount
required by the TPP, and she made the payment Chase told her to
make.

In February 2010, Chase stopped accepting Heino's payments
and refused to make her modification permanent.  That same
month, Chase sent Heino a letter captioned "Notice of Collection
Activity."  It is undisputed that Chase's notice included all
the information required by paragraph 22 of the mortgage.

Specifically, the notice told Heino that she could cure her default by paying the total amount due stated in the notice ($7,597.21), plus any additional monthly payments and late charges falling due within 30 days after the date of the notice. She did not do so.  However, while Chase scheduled one or more foreclosure sales, it never conducted one

In December 2010, Chase sent Heino a letter she characterizes as "offering to allow her to sell [the mortgaged property] for less than the total balance on the loan."  Doc. no. 10-2 ¶ 17.  But rather than making such an offer, that letter merely informed Heino that Chase was willing to talk with her about the possibility of avoiding foreclosure by conducting a short sale.  See doc. no. 10-6 at 2 of 3.

Over the next several years, Chase sent Heino any number of mortgage statements and other communications concerning her loan.  See doc. no. 10-4.  Finally, in August 2015, after Chase assigned Heino's mortgage to U.S. Bank, the new loan servicer, Caliber Home Loans ("Caliber"), sent Heino a letter that states, in pertinent part:

> Caliber Home Loans, Inc. recently acquired the servicing of your mortgage loan.  In connection with this servicing transfer, Caliber is required to provide you with certain information regarding the outstanding debt on your mortgage loan account.
>
> As of 8/25/2015, our records indicate that LSF9 MASTER PARTICIPATION TRUST is the creditor of your loan and the total debt is: $466,858.63.

> We are not requesting that you pay the entire loan
> balance and this is not a payoff statement.

Doc. no. 10-5 at 2 of 3.[1]  The letter went on to tell Heino how
to get a payoff statement and how to dispute the validity of the
debt.

It is undisputed that Heino has not met the payment
obligations specified in her promissory note since late 2009, at
the latest.  She herself has produced a "Mortgage Loan
Statement" dated December 1, 2014, indicating that as of that
date she had: (1) made no payments of principal or interest
during 2014; (2) an unpaid principal balance of $318,618.56; and
(3) a negative escrow balance of $43,489.80.  Doc. no. 10-4 at 6
of 15.

D.    Notice of Foreclosure

In January 2016, Heino received a Notice of Mortgage
Foreclosure Sale from Harmon Law Offices, P.C. ("Harmon").  In
her verified complaint, Heino avers that the notice from Harmon
does not comply with the requirements of paragraph 22 of her
mortgage.

---

[1] Caliber also itemized Heino's debt, indicating that it was
composed of a principal balance of $318,133.56, accrued interest
of $89,010.99, fees and costs of $11,335.28, and an escrow
deficit of $48,378.80.

This action followed.  It was initiated in the superior court by a pleading titled: "Complaint for an Ex Parte Emergency Injunction Against Foreclosure, Preliminary Injunction Against Foreclosure, Permanent Injunction Against Foreclosure, and for Damages."  That complaint asserted six claims, which are captioned: breach of contract (Counts I and II), unclean hands (Count III), violation of TILA 15 U.S.C. § 1641(g) (Count IV), void mortgage assignment (Count V), and fraudulent misrepresentation (Count VI).  The superior court denied Heino's request for an ex parte injunction, but, after a hearing, the court granted her a preliminary injunction against foreclosure. Shortly thereafter, U.S. Bank removed the case to this court, where plaintiff has since stipulated to the dismissal of Count IV.  See doc. no. 9.

## Discussion

Defendant now moves for summary judgment on each of plaintiff's remaining claims.  Plaintiff objects on a claim-by-claim basis, but also argues that defendant's motion should be summarily denied, as premature, because it was filed before she had conducted any discovery.  Defendant contends that given the nature of its defenses, the lack of discovery is immaterial.  In this section, the court begins with plaintiff's argument that

defendant's summary judgment motion is premature, and then considers each of plaintiff's five claims.

A.   Plaintiff's Need for Discovery

The Federal Rules of Civil Procedure do not require that any discovery be conducted before a court grants summary judgment.  See Fed. R. Civ. P. 56(b); Washington v. Allstate Ins. Co., 901 F.2d 1281, 1285 (5th Cir. 1990).  Therefore, defendant's motion will not be summarily denied as premature.

However, Rule 56(d) "protects a litigant who justifiably needs additional time to respond in an effective manner to a summary judgment motion." In re PHC S'holder Litig., 762 F.3d 138, 143 (1st Cir. 2014) (internal citations omitted); see also Klayman v. Judicial Watch, Inc., Civ. No. 06-670 (CKK), 2007 WL 1034937, at *12 (D.D.C. Apr. 3, 2007) ("[T]he purpose of Rule 56(f)[2] is to prevent 'railroading' the non-moving party through a premature motion for summary judgment before the non-moving party has had the opportunity to make full discovery." (internal citations omitted)).  Rule 56(d) provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

---

[2] "'Rule 56(d) was formerly Rule 56(f),' and 'the textual differences between current Rule 56(d) and former Rule 56(f) are purely stylistic.'" In re PHC S'holder Litig., 762 F.3d at 143 n.2 (quoting Nieves-Romero v. United States, 715 F.3d 375, 381 n.3 (1st Cir. 2013)).

**(1)**   defer considering the motion or deny it;

**(2)**   allow time to obtain affidavits or declarations or to take discovery; or

**(3)**   issue any other appropriate order.

Fed. R. Civ. P. 56(d).  Under Rule 56(d), a litigant must provide the court with an authoritative statement that:

> (i) explains his or her current inability to adduce the facts essential to filing an opposition, (ii) provides a plausible basis for believing that the sought-after facts can be assembled within a reasonable time, and (iii) indicates how those facts would influence the outcome of the pending summary judgment motion.

Hicks v. Johnson, 755 F.3d 738, 743 (1st Cir. 2014) (quoting Velez v. Awning Windows, Inc., 375 F.3d 35, 40 (1st Cir 2004)). Additionally, a party seeking discovery to oppose summary judgment must show "good cause" for failing to conduct the desired discovery at an earlier date.  See id. at 743.  The requirements of Rule 56(d) "are not inflexible and . . . may be relaxed, or even excused, to address the exigencies of a given case."  See In re PHC S'holder Litig., 762 F.3d at 144 (quoting Resolution Trust Corp. v. N. Bridge Assocs., Inc., 22 F.3d 1198, 1203 (1st Cir. 1994)).  "[D]istrict courts should construe motions that invoke [Rule 56(d)] generously, holding parties to the rule's spirit rather than its letter."  Id. at 143 (quoting Resolution Trust Corp., 22 F.3d at 1203).

Although Heino did not file a Rule 56(d) motion or
affidavit, she invokes the rule in her objection to U.S. Bank's
summary judgment motion.  See, e.g., Cauchi v. Dead Serious
Promotions LLC, No. 15-8255(FLW)(DEA), 2016 WL 3691975, at *4
(D.N.J. July 11, 2016) (granting discovery under Rule 56(d)
although plaintiff failed to submit a formal affidavit or
declaration).  Heino explains that discovery is necessary to
establish certain facts relevant to her foreclosure defenses.
See doc. no. 10-1 at 5-6.  While parties usually invoke Rule
56(d) to supplement or reopen earlier discovery, no discovery
has taken place in this case because its commencement was stayed
pending resolution of this motion.  As such, Heino has
undoubtedly shown good cause for failing to conduct any required
discovery at an earlier date.

Thus, because Heino has had no opportunity to conduct
discovery, the court will generously construe Heino's request
for discovery as it relates to each of her claims, and summary
judgment will be denied to the extent that discovery may raise a
triable issue of fact.

B.   Count I: Breach of Contract (Mortgage)

In Count I, Heino asserts that U.S. Bank breached the
mortgage agreement, because she "received no notice from U.S.
Bank or any other entity prior to receiving the January 15, 2016

letter, which contains none of the information required by Section 22 of the Mortgage." Doc. no. 1-1 ¶ 27. For that purported breach, Heino seeks some combination of compensatory damages and injunctive relief.

U.S. Bank argues that it is entitled to judgment as a matter of law on Count I because it is undisputed that in 2010, Chase sent Heino a letter that included all the information required by paragraph 22. In her objection, Heino argues that "because there is a genuine issue of fact as to whether the Parties intended for a six-year-old notice to satisfy Paragraph 22 of the Mortgage, there is a genuine issue of material fact as to whether U.S. Bank breached the mortgage contract by failing to send a new notice." Doc. no. 10-1 at 8. She further argues that based upon conduct by Chase, and subsequent conduct by U.S. Bank's loan servicer, "[t]here is a genuine issue of material fact as to whether Chase waived or abandoned the initial Paragraph 22 Notice," id. at 6, which, in her view, creates "a genuine dispute as to whether U.S. Bank breached Paragraph 22 of the Mortgage contract." Id.

First, the court finds no support for Heino's argument that the passage of time has somehow diffused the legal effect of the paragraph 22 notice she received in 2010, and Heino cites no legal authority for that proposition. Rather, Heino contends that because interest and other fees would continue to accrue

over time, thus increasing the amount she would have to pay to cure a default, the parties could not have intended for a paragraph 22 notice to continue in force indefinitely.

The mortgagors raised a similar argument, based upon an identical mortgage provision, in Galvin v. EMC Mortg. Corp., No. 12-cv-320-JL, 2013 WL 1386614 (D.N.H. Apr. 4, 2013). Specifically, the mortgagors in Galvin argued that paragraph 22 of their mortgage required a separate notice each time a mortgagee attempted to foreclose. See id. at *6. The court rejected that argument:

> The Galvins do not identify any specific language in the text of ¶ 22 to support this interpretation. Indeed, their position is affirmatively at odds with ¶ 22. By its terms, that provision requires the mortgagee to give notice only once — "following Borrower's breach of any covenant or agreement in this Security Instrument." If, following that breach, the mortgagor fails to cure its default as specified in the notice, the provision expressly states that the mortgagee may "at its option . . . require immediate payment in full of all sums secured by this Security Instrument without further demand" or pursue other remedies, including foreclosure.
>
> The Galvins do not contend that Mr. Galvin cured his default at any point after the March 2010 notice. Defendants were therefore entitled to commence foreclosure in 2012, even after having abandoned a prior foreclosure attempt, "without further demand" — i.e., without sending a further notice. See Wells Fargo Fin. Kan., Inc. v. Temmel, 251 P.3d 112, 2011 WL 1877829, *2-3 (Kan. Ct. App. 2011) (where mortgagee sent notice before initial foreclosure attempt and mortgagor did not cure default, similar mortgage provision did not require mortgagee to resend notice before commencing foreclosure a second time); cf. also New S. Fed. Sav. Bank v. Pugh, No. E2009-02150-COA-R3-

CV, 2010 WL 4865606, *5–6 (Tenn. Ct. App. Nov. 29,
2010) (acceleration notice sent pursuant to
substantially similar mortgage provision did not
become "stale and ineffective" because more than one
year elapsed before mortgagee commenced foreclosure).

Id. (citations to the record omitted).

This court is persuaded by the reasoning of Galvin.

Paragraph 22 of Heino's mortgage contains identical language to

paragraph 22 of the mortgage in Galvin.  See id.; doc. no. 5–5

at 16 of 23.  Although the time span between the notice and the

attempted foreclosure in Galvin was approximately 27 months (two

years, three months), rather than the 71 months (five years,

eleven months) in this case, the court based its decision on the

language contained in the notice provision, not the passage of

time after the initial notice.  Heino offers no basis for the

court to distinguish between the 27-month span in Galvin and the

71-month span in this case.  Therefore, because the language in

the notice provision in Galvin did not require a second notice,

the identical language in paragraph 22 of Heino's mortgage did

not either.  Finally, to the extent Heino is arguing that she

needed a new paragraph 22 notice because the amount of debt

stated in the 2010 notice was outdated, the court notes that

Heino has produced no fewer than four documents from 2014 and

2015 indicating the amount she owed.  See doc. no. 10-4 at 6,

10, and 12 of 15; doc. no. 10-5 at 2 of 3.

As the court previously noted, plaintiff has identified no authority for the proposition that a notice of default can go stale, and the court has found none.  On the other hand, in Frangos v. Bank of America, N.A., the court ruled that a notice of default had lost its effect, but only because of something not present in this case: a post-acceleration "agreement reaffirming and modifying the terms of [the] debt."  No. 13-cv-472-PB, 2014 WL 3699490, at *3 (D.N.H. July 24, 2014).  Here, there were no intervening actions by Heino, such as an attempt to cure her default or an agreed-to modification of the terms of the debt, that rendered the 2010 notice ineffective and required a new one.

Heino further argues that Chase abandoned or waived the paragraph 22 notice it provided in 2010.  There are circumstances under which a mortgagee can be said to have abandoned or waived its invocation of a right to accelerate:

> Accepting a payment after acceleration could be intentional conduct inconsistent with the acceleration that — in some circumstances — amounts to an abandonment or waiver of the acceleration.  See Rivera [v. Bank of Am., N.A.], 607 F. App'x [358,] 361 [(5th Cir. 2015)].  Similarly, representing to the mortgagor that payment of less than the entire obligation will bring the loan current may amount to abandonment or waiver of the acceleration as a manifestation of "actual intent to relinquish" it.  Boren [v. U.S. Nat'l Bank Ass'n], 807 F.3d [99,] 105 [[(5th Cir. 2015)].

Martin v. Fed. Nat'l Mortg. Ass'n, 814 F.3d 315, 318–19 (5th Cir. 2016); see also Leonard v. Ocwen Loan Servicing, LLC, 616 F. App'x 677, 680 (5th Cir. 2015) ("The Leonards have provided us with no reason to disagree with the district court's conclusion that Ocwen unilaterally abandoned Saxon's 2009 Notice by sending the Leonards account statements indicating the past due balance and by giving the Leonards the option to cure their default by paying the past due balance in August 2010."), cert. denied 136 S. Ct. 554 (2015).

Heino argues that, like the statements in Martin, various communications from Chase and Caliber abandoned or waived the paragraph 22 notice. See doc. nos. 10-4, 10-5, and 10-6. However, notwithstanding Heino's own characterization, those statements did not give Heino the option to cure her default by paying the past due balance or represent that payment of less than the entire obligation would bring the loan current. Thus, as a matter of law, the statements from Chase and Caliber did not constitute an abandonment or waiver of the 2010 notice.

Heino contends that discovery will produce additional evidence establishing an abandonment or waiver of the 2010 notice. Based on her own allegations, it appears that Heino already possesses all communications and statements sent regarding her mortgage. However, discovery may reveal evidence showing that a mortgagee or loan servicer sought payment of less

than the full amount due under the loan to remedy Heino's
default or otherwise manifested an intent to abandon or waive
the 2010 notice. Although U.S. Bank has made a strong showing
that summary judgment may be appropriate, Heino has nonetheless
established that discovery is necessary at this early stage.
Therefore, U.S. Bank's motion for summary judgment on Count I is
denied without prejudice.

C.    Count II: Breach of Contract (TPP Agreement)

In Count II, Heino asserts that U.S. Bank is liable to her
for breach of contract because:

> [She] entered into a trial payment modification plan
> with U.S. Bank's predecessor, Chase. Chase
> represented to her that it would permanently modify
> the loan. Chase refused to modify the loan, despite
> [her] compliance with the terms of the trial
> modification plan.

Doc. no. 1-1 ¶ 30. In her complaint, Heino seeks both
compensatory damages and a permanent injunction against
foreclosure.

The First Circuit has held that a TPP extended pursuant to
the federal Home Affordable Modification Program can create an
enforceable contract obligating a lender to offer a borrower a
permanent modification if the borrower complies with the terms
of the agreement. See Young v. Wells Fargo Bank, N.A., 717 F.3d
224, 229, 234 (1st Cir. 2013). The plain terms of the TPP
dictate whether a lender is required to offer the borrower a

permanent modification upon successful completion of the trial modification.  See id. at 234; see also Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547, 562 (7th Cir. 2012); Corvello v. Wells Fargo Bank, NA, 728 F.3d 878, 883-84 (9th Cir. 2013).  In certain cases, "courts, after reviewing the language in the TPP, have found that it is simply one step in the application process towards a permanent modification, and therefore cannot form the basis for a breach of contract claim because there was no guarantee of a permanent modification."  Laughlin v. Bank of Am., N.A., No. 13-4414, 2014 WL 2602260, at *7 (D.N.J. June 11, 2014) (citing cases).  To this point, neither party has produced any evidence related to the TPP.  Thus, without the benefit of discovery, the court cannot conclude whether the agreement required Chase to offer Heino a permanent loan modification.

U.S. Bank argues that it is entitled to judgment as a matter of law on Count II because it was not a party to the TPP agreement and because Heino's claim is barred by the statute of limitations.  In her objection, Heino argues that Count II is not a cause of action seeking affirmative relief, but rather that Chase's breach of its TPP agreement is a defense to foreclosure.  On that basis, Heino contends that: (1) she may invoke Chase's breach against U.S. Bank as a defense to foreclosure; and (2) because she is invoking Chase's breach as a

defense to foreclosure rather than asserting it as a claim for affirmative relief, the statute of limitations does not apply.

"Under New Hampshire law, a contract claim must be brought within three years of the time the cause of action arises — that is, when the breach occurs." Jeffery v. City of Nashua, 163 N.H. 683, 689 (2012) (internal citations omitted).  However, a court may characterize arguments raised in a mortgagor's petition to enjoin a non-judicial foreclosure sale as affirmative defenses against the foreclosure.  See Bolduc v. Beal Bank, SSB, 994 F. Supp. 82, 90 (D.N.H. 1998), aff'd, 167 F.3d 667 (1st Cir. 1999).  Such defenses are not subject to the statute of limitations.  See Lehane v. Wachovia Mortg., FSB, No. 12-CV-179-PB, 2013 WL 4677753, at *1 (D.N.H. Aug. 30, 2013).

Here, Heino's claim for monetary damages based on Chase's alleged breach of the TPP agreement in 2010 is barred by the three-year statute of limitations.  However, the statute of limitations does not bar Heino from asserting this claim as an affirmative defense to the foreclosure.  Thus, Heino's breach of contract claim may proceed in the form of an affirmative defense.

Nonetheless, U.S. Bank argues that Heino cannot maintain this defense because U.S. Bank was not a party to Heino's TPP agreement with Chase.  The New Hampshire Supreme Court has explained that "[a] debtor may, generally, assert against an

assignee [1] <u>all equities or defenses existing against the</u>
<u>assignor prior to notice of the assignment</u>, [2] any matters
rendering the assignment absolutely invalid or effective, and
[3] the lack of plaintiff's title or right to sue." Woodstock
Soapstone, Co. v. Carleton, 133 N.H. 809, 817 (1991) (emphasis
added) (quoting 6A C.J.S. <u>Assignments</u> § 115, at 780 (1975)); <u>see</u>
<u>also</u> Drouin v. Am. Home Mortg. Servicing, Inc., No. 11-cv-596-
JL, 2012 WL 1850967, at *3-4 (D.N.H. May 18, 2012) (holding that
defense to foreclosure existing prior to mortgage assignment
could be raised against assignee).  U.S. Bank asserts that
Heino's breach of contract defense to the foreclosure is invalid
because it is unrelated to the assignment of the mortgage.

U.S. Bank appears to misinterpret the relevant language in
<u>Woodstock</u>.  While a debtor may argue that a mortgage assignment
itself is invalid, she may also assert defenses unrelated to the
assignment of the mortgage that existed against the assignor
prior to the assignment.  In Count II, Heino is not challenging
the validity of the mortgage assignment to U.S. Bank.  Rather,
she is raising a defense that purportedly existed in 2010, i.e.,
Chase's alleged breach of the TPP, which occurred well before
Chase assigned the mortgage to U.S. Bank in August 2015.  Thus,
as the assignee of Heino's mortgage, U.S. Bank is subject to any
foreclosure defenses that Heino could have asserted against
Chase prior to the mortgage assignment.  Because neither party

has produced any evidence related to the terms of the TPP, a genuine issue of material fact exists as to whether Heino could have properly raised this affirmative defense prior to the mortgage assignment.

In sum, U.S. Bank is not entitled to summary judgment on Count II on either ground raised in its motion. Although it is unclear at this early stage in the litigation whether Chase's alleged breach of the TPP would entitle Heino to the equitable relief she seeks, discovery is needed to determine the validity and scope of the TPP agreement.[3] Accordingly, U.S. Bank's motion for summary judgment on Count II is denied without prejudice.

D.    Count III: Unclean Hands

In Count III, Heino makes the following relevant assertions:

> U.S. Bank cannot invoke the power of sale, historically, an equitable mechanism of recovery, when it has failed, through Chase, its predecessor, to honor the promise to modify the loan, and where Chase had instructed [Heino] to default on her payments. Its failure to modify and instructions to not make her payments have caused the alleged default, and therefore, cannot be a basis by which to foreclose.

---

[3] For example, the court in Montalvo v. Bank of Am. Corp., found that the plaintiff was not entitled to equitable enforcement of an oral trial modification agreement, including her request that the court enjoin the defendants from foreclosing, because the oral agreement lacked enforceable terms. See 864 F. Supp. 2d 567, 585, 593-94 (W.D. Tex. 2012).

Doc. no. 1-1 ¶ 34.  U.S. Bank argues that it is entitled to judgment as a matter of law on Count III because this count does not allege any wrongdoing on its part.  In her objection, Heino clarifies that she is raising unclean hands as a defense to enjoin U.S. Bank from foreclosing, and argues that U.S. Bank is liable for Chase's assertedly inequitable conduct.

Unclean hands is not a cause of action; it is a defense that bars equitable relief in certain circumstances.  See Hersey v. WPB Partners, LLC, No. 11-cv-207-SM, 2014 WL 575304, at *1 (D.N.H. Feb. 11, 2014); Moulton-Garland v. Cabletron Sys., Inc., 143 N.H. 540, 544 (1999).  "A mortgagee's right to foreclose on a mortgage is a right to equitable relief."  Phinney v. Levine, 117 N.H. 968, 971 (1977) (citations omitted); see also Lehane, 2013 WL 4677753, at *1 n.1.  Although the court has found no New Hampshire case law directly on point, it appears evident that a mortgagor can raise a mortgagee's unclean hands as a defense to enjoin a foreclosure sale.  See, e.g., Derisme v. Hunt Leibert Jacobson P.C., 880 F. Supp. 2d 311, 329 (D. Conn. 2012) (listing unclean hands as equitable defense to foreclosure actions); Citibank, N.A. v. Dalessio, 756 F. Supp. 2d 1361, 1367 (M.D. Fla. 2010) ("As for the affirmative defense of unclean hands, such a defense is sufficient to prevent foreclosure.").

Like the breach of contract claim in Count II, Heino may assert unclean hands as a defense to U.S. Bank's attempt to

foreclose.  U.S. Bank argues that Chase's alleged unclean hands cannot be a defense to U.S. Bank's attempt to foreclose, since U.S. Bank did not commit the alleged wrongdoing.  However, as discussed above, neither party has produced any evidence related to the terms of the TPP, which provides the foundation for Chase's alleged promise to modify the loan.  Without the benefit of discovery, it is unclear whether Chase's alleged conduct constitutes unclean hands, such that U.S. Bank would be barred from foreclosing on that basis.  Because discovery may help establish whether Chase's actions constitute unclean hands, the court concludes that it is premature to address U.S. Bank's argument at this time.  Accordingly, U.S. Bank's motion for summary judgment on Count III is denied without prejudice.

E.   Count V: Void Mortgage Assignment

     In Count V, and in reliance upon N.H. Rev. Stat. Ann. ("RSA") 478:42, Heino makes the following relevant assertions concerning the assignment of her mortgage:

> In 2013, the FDIC and/or Chase filed [in the Merrimack County Registry of Deeds] a Mortgage Assignment purporting to "memorialize" a transfer to it by the FDIC that occurred by "operation of law."  Upon information and belief, it has previously been determined that Chase did not obtain any assets from the FDIC by operation of law.  Thus, the mortgage assignment to Chase is both presumed fraudulent and void.
>
> Because the mortgage assignment to Chase is void, it had no title to transfer, and therefore, it could not

> transfer title to U.S. Bank.  Thus, U.S. Bank is
> without title to the Property.
>
> Because U.S. Bank is without title to the Property, it
> may not invoke the statutory power of sale, and it may
> not foreclose.

Doc. no. 1-1 ¶¶ 42-44 (emphasis added).  Based upon the

foregoing, Heino asks the court to enjoin U.S. Bank from

foreclosing on her mortgage.  U.S. Bank argues that it is

entitled to judgment as a matter of law on Count V because

Heino's reliance "upon information and belief" is a conclusory

allegation that is insufficient to defeat summary judgment.  See

Magarian v. Hawkins, 321 F.3d 235, 240 (1st Cir. 2003).

While U.S. Bank is correct that conclusory allegations are

generally insufficient to defeat a summary judgment motion,

Heino has had no opportunity to conduct discovery in order to

support the allegations in her complaint.  In Magarian, by

contrast, the district court granted summary judgment following

the close of discovery, after the plaintiffs presumably had

ample opportunity to gather evidence in support of their

complaint.  See 321 F.3d at 236.  Because Heino has had no such

opportunity, defendant's narrow summary judgment argument is

inappropriate at this stage.  See Klayman, 2007 WL 1034937, at

*12 ("Defendants argue that summary judgment is appropriate

because [Plaintiff] . . . makes assertions based on "information

and belief" rather than personal knowledge.  Of course, it would

be premature to grant Defendants summary judgment on those
grounds, as [Plaintiff] has not yet had the opportunity to
uncover the necessary factual support for his arguments against
summary judgment.").  While U.S. Bank may be entitled to summary
judgment on Count V on other grounds, U.S. Bank fails to raise
such grounds in its motion.  Thus, U.S. Bank's motion for
summary judgment on Count V is denied without prejudice.

F.    Count VI: Fraudulent Misrepresentation

       In Count VI of her verified complaint, Heino asserts that
U.S. Bank is liable to her for fraudulent misrepresentation
because the WaMu employee who initially approached her failed to
"tell[] her that [her] new mortgage would be a negatively
amortizing loan, or that the interest rate would increase almost
immediately."  Doc. no. 1-1 ¶ 47.  As a remedy for the claim she
asserts in Count VI, Heino seeks compensatory damages and
"rescission of the original contract."  Id. ¶ 48.[4]  U.S. Bank
argues that it is entitled to judgment as a matter of law on
Count VI because Heino does not allege that it made any
representation to her, and because her claim is barred by the
statute of limitations.

---

[4] It is not clear whether Heino intended the term "original
contract" to refer to her note, her mortgage, or both, but given
the court's disposition of Count VI, it is not necessary to
resolve that ambiguity.

In response, Heino characterizes Count VI as an affirmative defense to foreclosure rather than a cause of action.  She frames her argument this way: "Fraud is a complete defense to the underlying contract, and thus a complete bar to foreclosure because 'fraud vitiates everything.'"  Doc. no. 10-1 at 13 (quoting Hoitt v. Holcomb, 23 N.H. 535, 554 (1851)).

The court begins by noting that Count VI, as asserted in Heino's complaint and as she characterizes it in her objection to summary judgment, is something of a hybrid that draws from both tort and contract law.  She labels Count VI "fraudulent misrepresentation," and recites the elements of that tort as stated by the New Hampshire Supreme Court in Tessier v. Rockefeller, 162 N.H. 324, 331-32 (2011).  But, in addition to seeking damages, a tort remedy, she asserts that WaMu's alleged fraud is a complete defense to the underlying contract and seeks "rescission of the original contract."  Doc. no. 1-1 ¶ 48. However, under either tort law or contract law, Heino's invocation of fraud comes too late to provide her with a defense to foreclosure.

As U.S. Bank correctly argues, a tort claim for fraudulent misrepresentation arising from the facts alleged in Heino's complaint is barred by the statute of limitations.  In New Hampshire,

> [e]xcept as otherwise provided by law, all personal
> actions, except actions for slander or libel, may be
> brought only within 3 years of the act or omission
> complained of, except that when the injury and its
> causal relationship to the act or omission were not
> discovered and could not reasonably have been
> discovered at the time of the act or omission, the
> action shall be commenced within 3 years of the time
> the plaintiff discovers, or in the exercise of
> reasonable diligence should have discovered, the
> injury and its causal relationship to the act or
> omission complained of.

RSA 508:4, I.  Heino alleges that fraudulent statements were
made to her before her closing on May 18, 2005, and according to
her affidavit, she learned of those statements' falsity
"[w]ithin a month of closing," when she "was shocked to see that
[her] interest rate increased" and "discovered that [her]
principal balance would not decrease over time because [she]
discovered that [her] loan was a negative-amortizing loan."
Doc. no. 10-2 ¶ 9.  Thus, Heino had until approximately May 18,
2008, to assert a tort claim for damages based on fraudulent
misrepresentation.  Because she first asserted her claim for
damages resulting from fraudulent misrepresentation in March
2016, that claim is barred by the New Hampshire statute of
limitations.

Count VI fares no better under contract law as an
affirmative defense to foreclosure.  After Heino discovered that
the terms of her loan were not what she had understood them to
be at her closing, she continued to make timely monthly payments

until some point in 2009.  In terms of contract law, she
affirmed the agreement.  By doing so, she gave up her right to
seek rescission as an equitable remedy or raise fraudulent
inducement as an affirmative defense.  As the New Hampshire
Supreme Court has explained:

> A party entering into an agreement in reliance upon a
> misrepresentation of a material fact has two choices.
> See [Mertens v. Wolfeboro Nat'l Bank, 119 N.H. 453,
> 455 (1979)].  "[H]e may justifiably elect to rescind
> or disaffirm the agreement and refuse to proceed
> further with the transaction[,]" or "he may elect to
> affirm the contract, keep its benefits, perform his
> obligations thereunder, and sue for damages" for
> misrepresentation.  Id.

Green v. Sumner Props., LLC, 152 N.H. 183, 185 (2005) (parallel
citations omitted).

The theory of affirmation described in Green has been
applied in the context of foreclosure.  In Mellon Bank, N.A. v.
Pasqualis-Politi, a bank sued several borrower/mortgagors,
seeking judicial foreclosure and judgments on notes.  See 800 F.
Supp. 1297, 1298 (W.D. Pa. 1992).  In their answers to the
bank's complaint, the defendants raised three affirmative
defenses, including:

> (1) fraud in the inducement to execute the purchases
> of the condominiums; [and] (2) plaintiff's unclean
> hands, which is based on the allegation of fraudulent
> inducement.

Id. at 1300.  In granting the plaintiff's motion for summary
judgment, the court rejected those affirmative defense:

> Defendants' election to affirm their purchases, to
> continue to make payments on their mortgages, and to
> have the use of their condominiums long after the
> expiration of the same two year statute of limitations
> which barred defendants' fraud counterclaims . . .
> also bars them from asserting the defenses of fraud in
> the inducement and unclean hands in the mortgage
> foreclosure actions.

Id. at 1302.

Turning to the facts of this case, after Heino discovered WaMu's alleged fraud, she elected to keep the benefits of the contract, i.e., the proceeds of her loan, and to perform her obligations thereunder by making timely payments.  In other words, she affirmed the contract and gave up her right to rescission as an equitable remedy, but retained her right to sue for damages.  However, as the court has already explained, the limitation period for a claim for damages ran long before she asserted the claim stated in Count VI.  In sum, even if the WaMu employee who approached Heino did misrepresent the terms of the loan she later got from WaMu, that misrepresentation would not give her a defense to foreclosure.

Finally, because it is undisputed that Heino became aware of the alleged misrepresentation in 2005, but continued making monthly loan payments until 2009, no amount of discovery could lead to the creation of a triable issue on Count VI.  Thus, the lack of discovery is no bar to a grant of summary judgment on

this count.  Accordingly, the court grants U.S. Bank's motion for summary judgment on Count VI.

### Conclusion

For the foregoing reasons, defendant's motion for summary judgment (doc. no. 5) is granted as to Count VI, and is otherwise denied without prejudice.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

December 6, 2016

cc:   Darian M. Butcher, Esq.
      Nathan Reed Fennessy, Esq.
      Stephen T. Martin, Esq.